IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERBERT SILVERBERG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIVINT SOLAR, INC., DAVID BYWATER, DAVID D'ALESSANDRO, BRUCE MCEVOY, JAY D. PAULEY, TODD R. PEDERSEN, ELLEN S. SMITH, JOSEPH S. TIBBETTS, JR., and PETER F. WALLACE,<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Herbert Silverberg ("Plaintiff"), by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Vivint Solar, Inc. ("Vivint", "Vivint Solar" or the "Company") and Sunrun Inc., ("Sunrun"), with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications; (c) review of news articles, shareholder communications, and postings on Vivint and Sunrun's website; and (d) review of other publicly available information.

**NATURE OF THE ACTION**

1.      This action is brought as by Plaintiff on behalf of himself and the other public holders of shares of common stock of Vivint Solar, par value $0.01 per share ("Vivint common stock")  for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§78n(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of Vivint.

2. On July 6, 2020, Vivint's board of directors (the "Board") caused Vivint to enter into an agreement and plan of merger (the "Merger Agreement") with Sunrun and Viking Merger Sub, Inc., a Delaware corporation and a wholly owned subsidiary of Sunrun ("Merger Sub"). The transaction referred to in the Merger Agreement (*i.e.* Merger Sub will merge with and into Vivint Solar, with Vivint Solar surviving the merger and becoming a wholly owned subsidiary of Sunrun) is referred to herein as the "Merger" or the "Proposed Transaction."

3. Under the terms of the Merger Agreement, each share of Vivint common stock issued and outstanding immediately prior to the effective time of the merger (the "effective time"), except for certain specified shares, will be converted into the right to receive 0.55 fully paid and nonassessable shares of Sunrun common stock and cash in lieu of fractional shares based upon the dollar volume-weighted average price of Sunrun common stock leading up to the Merger.

4. The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Vivint. Sunrun expects the Proposed Transaction to close in the fourth quarter of 2020.

5. On August 14, 2020, in order to convince Vivint's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of joint proxy statement/prospectus, which was filed by Sunrun on Form S-4 with the SEC (the "S-4" or the "Registration Statement").

6. Defendants, in the S-4, tout the fairness of the Merger Consideration to the Company's stockholders. However, they have failed to disclose material information necessary for Vivint's stockholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the S-4 materially incomplete and misleading.

7. It is imperative that the material information that has been omitted from the S-4 be disclosed to the Vivint's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Section 14(a) of the Exchange Act, and Rule 14a-9.

8. Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Vivint's stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331 as Plaintiff alleges violations of Section 14(a) of the Exchange Act.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.

11. In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

12. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391, because Defendants are found or are inhabitants or transact business in this District and because Vivint common stock trades on the New York Stock Exchange

("NYSE"), which is headquartered in this District. Additionally, the S-4 was or will be mailed to Plaintiff in this District.

## THE PARTIES

13. Plaintiff is, and at all relevant times has been, a Vivint stockholder.

14. Defendant Vivint Solar, Inc., provides distributed solar energy primarily to residential customers in the United States. Vivint common stock is traded on the NYSE under the symbol "VSLR."

15. Defendant David Bywater is the Company's Chief Executive Officer ("CEO") and has served on its Board since 2017.

16. Defendant David D'Alessandro has served on the Board since 2013.

17. Defendant Bruce McEvoy has served on the Board since 2012.

18. Defendant Jay D. Pauley has served on the Board since 2015.

19. Defendant Todd R. Pedersen has served on the Board since 2012.

20. Defendant Ellen S. Smith has served on the Board since June 10, 2020.

21. Defendant Joseph S. Tibbetts, Jr., has served on the Board since 2014.

22. Defendant Peter F. Wallace has served on the Board since 2012, and currently serves as its Chairman.

23. The Defendants named in ¶¶15-22 are collectively referred to herein as the "Individual Defendants" and, with Vivint, as "Defendants."

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the other stockholders of Vivint (the "Class"). Excluded from the Class are Defendants herein and any person or other entity related to or affiliated with any Defendant.

25. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of August 1, 2020, Vivint had 125,414,499 shares outstanding. Those shares are beneficially held by hundreds to thousands of individuals and entities scattered around the world. The actual number of public stockholders of Vivint will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i. Whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the S-4 in violation of Section 14(a) of the Exchange Act; and

ii. Whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading S-4.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

    g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**Vivint Announces the Proposed Transaction**

26. On July 6, 2020, after the market's close, Sunrun disclosed that it had entered into a definitive agreement to acquire Vivint for an enterprise value of $3.2 billion via a press release that stated, in pertinent part:

> *Adding a Complementary Direct-to-Home Sales Channel to Platform*
>
> *Accelerating Operating and Scale Efficiencies to Enhance Customer and Shareholder Value*
>
> *Sunrun Would Become a Leading Owner of Solar Assets Globally with Nearly 500,000 Customers and More Than 3 Gigawatts of Solar Energy*
>
> *Annual Cost Synergies Estimated at $90 million*
>
> SAN FRANCISCO, July 06, 2020 (GLOBE NEWSWIRE) -- Sunrun (NASDAQ: RUN), a leading provider of residential solar, battery storage and energy services, and Vivint Solar (NYSE: VSLR), a leading full-service residential solar provider in the United States, today announced the companies have entered into a definitive agreement under which Sunrun will acquire Vivint Solar in an all-stock transaction, pursuant to which each share of Vivint Solar common stock will be exchanged for 0.55 shares of Sunrun common stock, representing a combined Enterprise Value of $9.2 billion based on the closing price of Sunrun's shares on July 6, 2020. Vivint Solar stockholders are expected to own approximately 36% and Sunrun stockholders are expected to own approximately 64% of the fully diluted shares of the combined company. The exchange ratio implies a 10% premium for Vivint Solar shares based on closing prices on July 6, 2020, and a 15% premium to the exchange ratio implied by the three month volume weighted average price of Vivint Solar and Sunrun shares.
>
> "Americans want clean and resilient energy. Vivint Solar adds an important and high-quality sales channel that enables our combined company to reach more households and raise awareness about the benefits of home solar and batteries," said Lynn Jurich, Sunrun's Chief Executive Officer and co-founder. "This transaction will increase our scale and grow our energy services network to help replace centralized, polluting power plants and accelerate the transition to a 100% clean energy future. We admire Vivint Solar and its employees, and look forward to working together as we integrate the two companies."

David Bywater, Chief Executive Officer of Vivint Solar, added, "Vivint Solar and Sunrun have long shared a common goal of bringing clean, affordable, resilient energy to homeowners. Joining forces with Sunrun will allow us to reach a broader set of customers and accelerate the pace of clean energy adoption and grid modernization. We believe this transaction will create value for our customers, our shareholders, and our partners."

**A Shared Mission to Create a Planet Run by the Sun**

Sunrun and Vivint Solar share a mission to create a planet run by the sun. Together, we can empower more families to take control of their energy future by increasing customer choice in how they create and consume power.

There is an urgent need to decarbonize our energy system. Extreme weather due to climate change is increasing, putting immense strain on our energy system. Fossil fuel power plants are responsible for more than 30% of all carbon pollution across the country. Sunrun will be a meaningful contributor to a fully renewable and electrified energy system. Our growing fleet of solar homes and batteries will be networked to provide greater benefits to the grid and energy consumers. Generating energy at the point it is used reduces the need for dirty energy being produced far away that is increasingly expensive to transmit. Our customers have already and will continue to help shut down inefficient carbon-producing power plants.

Our combined customer base of nearly 500,000 creates a leading owner of solar assets globally, with over 3 gigawatts of solar assets on the balance sheet. Yet, residential solar has reached only 3% penetration in the United States today and the runway for growth remains massive.

Sunrun has committed to leading the solar industry in diversity and inclusion efforts, career development, and employee benefits. As part of a broader, more diversified company, we will be able to offer employees even more opportunities and solidify our position as the best place to work in the solar industry.

**Strategic Rationale**

This is a transformational opportunity to generate consumer and shareholder value, realize annual cost synergies and bring cleaner, affordable energy to more homes. It establishes Sunrun as a leading home solar and energy services company across the United States, bringing greater opportunities for consumers to save money on their electric bills and decrease dependence on fossil fuels.

Residential solar has reached only 3% penetration in the United States today and yet surveys show nearly 9 out of 10 people in the United States favor expanding the use of solar power. The acquisition of Vivint Solar adds a complementary direct-to-home sales channel to Sunrun's platform, increasing our reach and capabilities in a growing market. Our thirteen years of experience has shown that a consultative experience from trusted sales advisors is important to educate

7

customers of the merits of solar energy. Vivint Solar's highly trained, consultative field sales experts will be an important part of the combined platform and will serve as critical ambassadors for consumers to learn the benefits of solar energy.

Like Sunrun, Vivint Solar has adapted to the current environment, accelerating digital lead generation efforts and providing a contact-less selling and installation experience in most instances. This transition has resulted in improvements for both companies, including setting the foundation for structural cost reductions and improved customer experience.

We expect to deliver meaningful cost synergies, estimated at $90 million on an annual basis. We see opportunities across the entire cost base, including consolidating and optimizing our branch footprint, reducing redundant spending on technology systems, scaling our proprietary racking technology, as well as improving sourcing capabilities within our supply chains. There are also opportunities to realize scale benefits from shared corporate functions including accounting, human resources, legal, and policy.

We expect additional revenue synergies to generate enhanced value creation for our customers and shareholders from a larger base of solar assets. We expect to be able to offer batteries to the combined base of solar customers. A larger footprint of solar and battery assets also increases the value of what we bring to our grid services partnerships and strengthens our ability to deliver considerable value in that business. We expect to benefit from efficiencies in large scale project finance capital raising activities and are excited about the opportunity to build an even stronger and more recognizable consumer brand in residential energy services.

**Benefits for Customers**

Most energy consumers are currently beholden to a single power company that provides electricity to them based on their household location. As a benefit of this combination, Sunrun's increased scale, operating efficiency and combined research and development (R&D) efforts will enable the company to even further accelerate the adoption of renewable energy and give households more control over their energy future.

A lower cost structure from greater scale can open more markets and allow lower pricing for customers, accelerating the transition away from polluting fossil fuels. It will also give our customers access to better, more affordable products and services. Lastly, combining R&D resources and focusing efforts will allow us to accelerate the offering of advanced solutions, such as virtual power plants and other energy services programs, to more customers in more markets.

**The Preclusive Deal Provisions**

27. The Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Vivint.

28. Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict non-solicitation provision preventing Vivint from soliciting. or continuing discussions and negotiations, with potential acquirers; (ii) an information rights provision that requires Vivint to disclose the identity of any competing bidder and to furnish information about any competing bid and to give Sunrun three business days to match the offer; and (iii) a provision that requires Vivint to pay $54 million termination fee of if the Merger Agreement is terminated in connection with a Company Change of Recommendation.

29. These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Vivint.

30. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Vivint's stockholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

**FALSE AND MISLEADING STATEMENTS AND MATERIAL OMISSIONS IN THE S-4**

31. Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to Vivint's stockholders to ensure that it did not contain any materially false and misleading statements or material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for Vivint stockholders to make

an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Section 14(a) of the Exchange Act.

**Material Omissions Relating to Financial and Business Projections**

32. The S-4 discloses certain financial measures that are not defined by generally accepted accounting principles ("GAAP"), including Total Volume, Total Megawatts, Total Costs, Net Cash Flow, Levered Free Cash Flow, EBITDA, Net Earning Assets, Estimated Net Retained Value, Estimated Net Contracted Customer Value, Aggregate Proceeds, and Aggregate Costs.

33. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading and has therefore heightened its scrutiny of the use of such projections. However, the S-4 fails to provide stockholders with the necessary line item projections for the metrics used to calculate the non-GAAP measure or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

**Material Omissions Relating to Financial Analyses**

34. With respect to Morgan Stanley's *Trading Comparables Analyses*, the S-4 omits: (1) the number of fully diluted shares outstanding of Vivint Solar common stock as of July 2, 2020, provided by the management of Vivint Solar and Vivint Solar's publicly reported net debt as of March 31, 2020, and (2) the number of fully diluted shares outstanding of Sunrun common stock as of July 2, 2020, provided by the management of Sunrun and Sunrun's publicly reported net debt as of March 31, 2020.

35. With respect to Morgan Stanley's *Levered Discounted Cash Flow Analyses*, the S-4 omits: (1) the inputs used to calculate levered free cash flow; (2) the inputs used to derive the discount rates of (a) 9.3% to 11.3% for Vivint, (b) 9.4% to 11.4% for Sunrun, and (c) 9.3% to 11.3% for the pro forma combined company; (3) the terminal values used in each analysis; (4) the

bases for using EBITDA trading multiple ranging from 12.0x to 16.0x applied to Vivint Solar DevCo's and Sunrun DevCo's EBITDA in 2025, (5) the number of fully diluted shares outstanding used in the calculations, and (6) the debt assumed in terminal years.

36. With respect to Morgan Stanley's *Discounted Equity Research Analysts' Future Price Targets*, the S-4 fails to disclose which public equity research analysts were reviewed and each of their specific price targets. Morgan Stanley's *Discounted Equity Research Analysts' Future Price Targets* also fails to disclose the inputs used to derive the discount rates for Vivint and Sunrun, and the reason the mid-point of the *Levered Discounted Cash Flow Analyses* was used.

37. With respect to BofA Securities, Inc.'s ("BofA") *Selected Publicly Traded Companies Analyses, the* S-4 fails to disclose the individual multiples and metrics for the companies observed, and the bases used for selecting comparable companies.

38. With respect to BofA's *Discounted Cash Flow Analyses*, the S-4 omits: (i) all line items used to calculate levered, after-tax free cash flows; (ii) the underlying inputs used to derive the discount rates of (a) 9.0% to 12.0% for Vivint and (b) 10.0% to 13.5% for Sunrun; (iii) the terminal values used for Vivint Solar and Sunrun; and (iv) the basis for applying exit multiples ranging from (a) 0.5x to 0.9x for Vivint and (b) 1.1x to 1.5x for Sunrun.

39. With respect to BofA's *Has/Gets Analysis*, the S-4 omits the underlying inputs and assumptions used to derive the discount and perpetuity growth rates applied.

\* \* \*

40. The omission of the foregoing information render the "Reasons for the Conflicts Committee's Recommendation", "Opinions of Vivint Solar's Financial Advisors", "Certain Sunrun Unaudited Prospective Financial Information" and "Certain Vivint Solar Unaudited

11

Prospective Financial Information" sections of the S-4 materially incomplete, in contravention of the Exchange Act.

## COUNT I

### AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. §78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

44. Defendants have issued the S-4 with the intention of soliciting stockholders' support for the Proposed Transaction. Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, among other things, the background of the transaction and financial projections for the Company.

45. In so doing, Defendants omitted material facts necessary to make the statements made not misleading. Each Defendant, as a director of the Company, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a). Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

46. Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

47. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the S-4 and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. Defendants were, at the very least, negligent in preparing and reviewing the S-4. The preparation of a proxy statement containing materially false or misleading statements or omitting a material fact by corporate insiders constitutes negligence. Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors.

49. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

50. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and his counsel as class counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C. Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 31, 2020 **ABRAHAM, FRUCHTER & TWERSKY, LLP**

By: _/s/_ Michael J. Klein
 Michael J. Klein
 One Penn Plaza, Suite 2805
 New York, NY 10119
 Telephone: (212) 279-5050
 Facsimile: (212) 279-3655
 Email: mklein@aflaw.com

*Attorneys for Plaintiff*